Gillings v New York Post (2018 NY Slip Op 07413)





Gillings v New York Post


2018 NY Slip Op 07413


Decided on November 7, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
ROBERT J. MILLER
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2017-04399
 (Index No. 100138/16)

[*1]Robert Gillings, appellant, 
v
New York Post, et al., respondents.


James R. Lambert, Staten Island, NY (Jonathan B. Behrins of counsel), for appellant.
Davis Wright Tremaine LLP, New York, NY (Robert D. Balin and John M. Browning of counsel), for respondents.



DECISION & ORDER
In an action to recover damages for defamation, the plaintiff appeals from an order of the Supreme Court, Richmond County (Kim Dollard, J.), dated February 28, 2017. The order, insofar as appealed from, granted the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint.
ORDERED that the order is affirmed insofar as appealed from, with costs.
The plaintiff and his former wife were married in 1990. In 1992, the plaintiff was convicted, upon his plea of guilty, of one count of felony mail fraud in connection with his employment as a stockbroker at the firm of J.T. Moran & Co., Inc.
In 2005, the plaintiff's former wife commenced a divorce action against the plaintiff in the Supreme Court, Richmond County. In 2015, the court in that case issued a decision after a trial (see C.G. v R.G., 46 Misc 3d 1214[A], 2015 NY Slip Op 50061[U] [Sup Ct, Richmond County]). In its decision, the court made certain factual findings, including that the defendant had been employed "with J.T. Moran & Co., Inc. a now defunct boiler room' broker-dealer" and that the defendant "was convicted after pleading guilty to a federal felony information charging him with one count of mail fraud in connection with his employment at Moran" (C.G. v R.G., 2015 NY Slip Op 50061[U], *6).
On February 9, 2015, the defendant Julia Marsh published a newspaper article in the defendant New York Post entitled "Divorce judge $ocks Boiler Room' scammer." The article included the following statement: "A stock pump and dump' felon whose story inspired the movie Boiler Room' tried to use his old tricks to swindle his estranged wife out of millions of dollars—but a judge still ordered the Staten Island man to pay her more than $1.8 million." The article continued: "Robert Gillings, who worked for the penny-stocks firm J.T. Moran & Co.—the inspiration for the 2000 Giovanni Ribisi film—pleaded guilty to mail fraud in 1994."
The plaintiff thereafter commenced this action against Marsh and the New York Post to recover damages for defamation. The defendants moved, inter alia, pursuant to CPLR 3211(a)(1) and (7) to dismiss the complaint on the ground that the allegedly defamatory statements contained [*2]in the newspaper article were privileged pursuant to Civil Rights Law § 74. In the order appealed from, the Supreme Court, among other things, granted the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint. The plaintiff appeals.
"On a pre-answer motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction and the plaintiff's allegations are accepted as true and accorded the benefit of every possible favorable inference" (Granada Condominium III Assn. v Palomino, 78 AD3d 996, 996; see Leon v Martinez, 84 NY2d 83, 87). However, on a motion to dismiss pursuant to CPLR 3211(a)(7), "bare legal conclusions are not presumed to be true" (Khan v MMCA Lease, Ltd., 100 AD3d 833, 833; see Goel v Ramachandran, 111 AD3d 783, 791-792). A motion to dismiss pursuant to CPLR 3211(a)(1) may be appropriately granted "only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326; see Allen v Echeverria, 128 AD3d 738, 739-740).
"Civil Rights Law § 74 is an affirmative defense to a claim of defamation" (Greenberg v Spitzer, 155 AD3d 27, 42). That section provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding" (Civil Rights Law § 74). The privilege afforded by this statute is absolute "and is not defeated by the presence of malice or bad faith" (Glendora v Gannett Suburban Newspapers, 201 AD2d 620, 620; see Cholowsky v Civiletti, 69 AD3d 110, 114). "This absolute privilege applies only where the publication is a comment on a judicial, legislative, or other official proceeding . . . and is a fair and true' report of that proceeding" (Saleh v New York Post, 78 AD3d 1149, 1151, quoting Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d 63, 67).
As to the threshold requirement that the publication purport to comment on a judicial, legislative, or other official proceeding, if the context in which the statements are made makes it impossible for the ordinary viewer, listener, or reader to determine whether the defendant was reporting on a judicial or other official proceeding, the absolute privilege does not apply (see Saleh v New York Post, 78 AD3d at 1151-1152; Cholowsky v Civiletti, 69 AD3d at 114-115; Wenz v Becker, 948 F Supp 319, 323 [SD NY]).
As to the requirement that the publication be a fair and true report of the official proceeding, the Court of Appeals has recognized that "newspaper accounts of legislative or other official proceedings must be accorded some degree of liberality" (Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d at 68). Accordingly, "[w]hen determining whether an article constitutes a fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision" (id. at 68). Rather, "[f]or a report to be characterized as fair and true' within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate" (Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d at 67; see Greenberg v Spitzer, 155 AD3d at 43).
Here, the subject newspaper article explicitly stated that it was describing the divorce action commenced against the plaintiff by his former wife (see Cholowsky v Civiletti, 69 AD3d at 115). Furthermore, the defendants' documentary evidence established, as a matter of law, that the disputed language in the newspaper article was a "fair and true" report of the factual findings made in the divorce action (Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d at 67; see Saleh v New York Post, 78 AD3d at 1152; Cholowsky v Civiletti, 69 AD3d at 115). Contrary to the plaintiff's contention, "the inaccuracies cited by the plaintiff were not so egregious as to remove the article from the protection of Civil Rights Law § 74" (Saleh v New York Post, 78 AD3d at 1151; see Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d at 67-68).
Accordingly, we agree with the Supreme Court's determination to grant the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint.
RIVERA, J.P., MILLER, BARROS and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court